IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-HC-2206-BO

| | | |
|---|---|---|
| ANTONIO S. AVENT, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| R. JONES, | ) | |
| Respondent. | ) | |

Petitioner Antonio S. Avent (hereinafter "petitioner") petitioned this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pet., D.E.1. The matter is before the court on respondent's motion for summary judgment. Resp't's Mot. for Summ. J., D.E. 9. Petitioner was given notice of the motion, but did not file any response. See Docket at D.E.11. In this posture, the matter is ripe for determination.

Background

Petitioner is a prisoner of the State of North Carolina. On May 6, 2010, in the North Carolina Superior Court of Wake County, petitioner was convicted following a trial by jury of robbery with a dangerous weapon. Mem. in Supp. of Summ. J., Ex. 1 at 1, 23. Petitioner was sentenced to a term of 120 to 153 months' imprisonment. Id. at 23. Petitioner was represented at trial by Spurgeon Fields. Id.

Petitioner noted an appeal of right to the North Carolina Court of Appeals, and in an unpublished opinion filed on August 2, 2011, that court found no error in petitioner's judgment. State v. Avent, 714 S.E.2d 531, 2011 WL 3276753 (N.C. App. Aug. 2, 2011) (unpublished). Petitioner was represented on appeal by Gilda C. Rodriguez. Id. at *1. On or about May 24, 2012, petitioner filed a motion for appropriate relief (MAR) in the North Carolina Superior

Court. Mem. in Supp. of Summ. J., Ex. 5; Ex. 7 at (2) (noting date MAR filed)). In an order filed June 15, 2012, the MAR was dismissed as procedurally barred. Id., Ex. 6. On July 19, 2012, petitioner filed a petition for writ of certiorari in the North Carolina Court of Appeals. Id., Ex. 7; State's Resp. attached at Ex. 8. The North Carolina Court of Appeals denied the petition on July 30, 2012. Id., Ex. 9. The petition now before this court was signed on August 20, 2012.

Issues

Petitioner asserts the following issues: (1) Ms. Conway's identification of him was tainted and unreliable, and the trial court committed plain error in denying his motion to suppress the identification; (2) the trial court erred when it denied his motion to dismiss the armed robbery charge for insufficient evidence because the State's case was based primarily on a tainted and unreliable identification; and (3) the courtroom setting in which Ms. Conway had an opportunity to identify petitioner was suggestive.

Discussion

i.   Standard of Review for Summary Judgment

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court

2

reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

    ii.    Factual Summary

The evidence presented at trial was summarized by the Court of Appeals as follows:

> On 10 August 2008, as she was leaving Wal–Mart, Maryanne Conway (Ms. Conway) noticed a white car pull into the parking lot, driving "very fast and erratic[,]" but did not pay any more attention to it. As Ms. Conway entered her vehicle, a man leaned in through her open driver's side door, held a knife out, and tried to reach for her purse located on the passenger-side seat. The man said "[g]ive me your purse" and Ms. Conway handed her purse to him. Thereafter, the man ran away and Ms. Conway walked back to Wal–Mart to call police. As she was walking, Ms. Conway noticed the same white car she had seen earlier was now exiting the parking lot and the driver was the man who had just robbed her. Ms. Conway memorized the license plate number of the white car and called the police.
>
> Detective R.P. Bowen of the Raleigh Police Department showed Ms. Conway a photographic lineup consisting of six photographs, one of which was of defendant. Ms. Conway was unable to identify anyone in the photographic lineup as the man who robbed her on 10 August 2008. Thereafter, Detective Bowen showed Ms. Conway a single photograph of defendant to see if she could make an identification and Ms. Conway "stated at the time that she could neither confirm nor deny that that was the person that robbed her."
>
> At trial, Ms. Conway described defendant as follows: "Black male. He had dread locks and some kind of bandana or something on his head. I didn't see how tall he was because I only saw him leaning in my car and then sitting in his car. . . . [He had facial hair] [l]ike a goatee and narrow." Although Ms. Conway was not able to identify defendant in a pre-trial photographic lineup or in a single photograph, at trial Ms. Conway made a positive in-court identification of defendant.
>
> Richard Warren Ferebee, II (Ferebee), testified that he had known defendant since August 2008. Ferebee loaned his car, a white 2007 Pontiac G6, to defendant from 9 August 2008 to 10 August 2008. Ferebee made it clear that no one else was to drive the car and he did not see anyone else but defendant driving his car.FN1
>
>> FN1. Ferebee also testified to his involvement in a burglary, larceny, and financial card fraud on 13 August 2008 with defendant and another

3

man. The trial court allowed joinder of these offenses. However, defendant was acquitted of the 13 August 2008 offenses.

Avent, 2011 WL 3276753 at *1.

    iii.    ADEPA Standard

A federal court cannot grant habeas relief in cases where a state court considered a claim on its merits unless (1) the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or (2) the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). A state court decision is "contrary to" Supreme Court precedent if the decision either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to the Supreme Court's result. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see Nevada v. Jackson, 133 S. Ct. 1990 (2013) (per curiam); Metrish v. Lancaster, 133 S. Ct. 1781, 1788–92 (2013); Marshall v. Rodgers, 133 S. Ct. 1446, 1450–51 (2013) (per curiam); Parker v. Matthews, 132 S. Ct. 2148, 2151–56 (2012) (per curiam); Hardy v. Cross, 132 S. Ct. 490, 493–94 (2011) (per curiam); Bobby v. Dixon, 132 S. Ct. 26, 29–31 (2011) (per curiam); Cavazos v. Smith, 132 S. Ct. 2, 4–8 (2011) (per curiam); Renico v. Lett, 130 S. Ct. 1855, 1862 (2010).

> [Section 2254(d)] does not require that a state court cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling

Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000) (en banc). Moreover, a state court's factual determination is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010).

Congress intended the AEDPA standard to be difficult to meet. Harrington v. Richter, 131 S. Ct. 770, 786 (2011). "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. In order to prevail in an action brought under section 2254(d), a petitioner must show that "there was no reasonable basis for the state court to deny relief." Id. at 784; see also DeCastro v. Branker, 642 F.3d 442, 449 (4th Cir.), cert. denied, 132 S. Ct. 818 (2011).

    iv.    Analysis

        a.    Legal Standard

The issue before this court is whether an earlier out-of-court photographic line-up invalidated the in-court identification of defendant by the victim witness. The Due Process Clause prohibits the admission into evidence at trial identification testimony which results from unnecessarily suggestive procedures that may lead to an irreparably mistaken identification. See Neil v. Biggers, 409 U.S. 188, 198 (1972); United States v. Saunders, 501 F.3d 384, 389 (4th Cir. 2007) ("Due process principles prohibit the admission at trial of an out-of-court identification obtained through procedures 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" (quoting Simmons v. United States, 390 U.S. 377, 384 (1968))). "The Due Process Clause is not implicated, however, if the 'identification was

5

sufficiently reliable to preclude the substantial likelihood of misidentification.' " United States v. Saunders, 501 F.3d 384, 389 (4th Cir. 2007) (quoting United States v. Johnson, 114 F.3d 435, 442 (4th Cir. 1997)); see also Manson v. Brathwaite, 432 U.S. 98, 106 (1977) (stating that the "central question" is "whether under the totality of the circumstances the identification was reliable even though the [identification] procedure was suggestive") (internal quotations omitted).

To determine whether a challenged identification should be suppressed, there is a two-step inquiry. United States v. Wilkerson, 84 F.3d 692, 695 (4th Cir.1996). Initially, the defendant "must prove that the identification procedure was impermissibly suggestive." Holdren v. Legursky, 16 F.3d 57, 61 (4th Cir.1994) (citing Brathwaite, 432 U.S. at 114). "A procedure is unnecessarily suggestive if a positive identification is likely to result from factors other than the witness's own recollection of the crime." Satcher v. Pruett, 126 F.3d 561, 566 (4th Cir.1997) (citing United States v. Peoples, 748 F.2d 934, 935–36 (4th Cir.1984)).

If the court concludes that the identification process or procedure was not impermissibly suggestive, the inquiry ends at step one. See United States v. Harris, 636 F.3d 1023, 1026 (8th Cir. 2011) ("Only if the photographic lineup was impermissibly suggestive must we proceed to analyze, under the totality of the circumstances, whether the impermissibly suggestive lineup created a likelihood of misidentification violating due process.") (citation omitted); Saunders, 501 F.3d at 389 n. 1 ("When the suggestiveness in the procedure does not reach the impermissible level, the 'potential for error' (or potential for misidentification) is left for testing 'by a course of cross-examination at trial.' ") (quoting Simmons, 390 U.S. at 384)).

If the court concludes that the identification process or procedure was impermissibly suggestive, the court next determines whether "the identification was nevertheless reliable under

6

the totality of the circumstances." Holdren, 16 F.3d at 61. The following five factors are considered in assessing the reliability of an out-of-court identification: "(1) the witness's opportunity to view the suspect at the time of the crime; (2) the witness's degree of attention at the time; (3) the accuracy of the witness's initial description of the suspect; (4) the witness's level of certainty in making the identification; and (5) the length of time between the crime and the identification. Saunders, 501 F.3d at 391-92 (citing, Johnson, 114 F.3d at 441 (citing Neil, 409 U.S. at 199-200)). Courts may also "consider other evidence of the defendant's guilt when assessing the reliability of the . . . identification." Id. (quoting Wilkerson, 84 F.3d at 695). Again, a witness's out-of-court identification must not only be impermissibly suggestive, but also unreliable. These two flaws, in combination, amount to a due process violation and make the out-of-court identification inadmissible, and in doing so render the subsequent in-court identification inadmissible.

   b.  State Court's Legal Analysis and Application

The North Carolina Court of Appeals in petitioner's case, found as follows on this issue:

> Defendant argues that the trial court committed plain error by denying his motion to suppress Ms. Conway's in-court identification of defendant when it was "tainted and unreliable." Defendant asserts that given the totality of the circumstances—that shortly after 10 August 2008 Ms. Conway was unable to identify defendant from a photographic lineup or a single photograph—her in-court identification of defendant was the result of "unnecessarily suggestive" procedures, creating a substantial likelihood of irreparable harm. Defendant also contends that the admission of Ms. Conway's in-court identification of defendant was prejudicial, material, and "significant to the State's case" because she was the only eye witness the State had for their case.
>
> Defendant filed a motion to suppress any attempted in-court identification of defendant by Ms. Conway, alleging that because she had failed to positively identify him prior to trial, any in-court trial identification would necessarily be prejudicial and inadmissible. The trial court held a pre-trial hearing on defendant's motion to suppress and made the following pertinent conclusions of law in denying defendants motion:

7

> [T]he presentation of a single photograph of [defendant] to [Ms. Conway] by Detective Bowen was unnecessarily suggestive but did not result in the identification of [defendant] at that time. That presentation of the single photograph did violate the procedure for eye witness identification of suspects as set forth in North Carolina General Statutes 15A–284(b) which was effective as of March 1, 2008.
>
> ... [T]hat procedure standing alone, although unnecessarily suggestive, did not create a likelihood of irreparable [mis]identification at the trial.
>
> ... [T]he Court has considered the totality of the circumstances. ... The evidence shall be admissible. It shall be for the jury to determine its credibility and to determine what weight to place on that testimony.

Thereafter, during trial, Ms. Conway made a positive in-court identification of defendant as the person who robbed her on 10 August 2008 and defendant failed to object.

We therefore review this issue for plain error.

> A pretrial ruling on a motion to suppress is preliminary. Because the evidence may be different when offered at trial, a party has the responsibility of making a contemporaneous objection. ... Therefore, to the extent defendant failed to preserve issues relating to the motion to suppress, we review for plain error.

State v. Waring, 364 N.C. 443, 468, 701 S.E.2d 615, 631–32 (2010) (internal citations omitted).

> [T]he plain error rule ... is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has "resulted in a miscarriage of justice or in the denial to appellant of a fair trial" or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" ...

State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citing United States v. McCaskill, 676 F.2d 995, 1002 *4th Cir. 1982)).

> "A suggestive and unnecessary identification procedure does not violate due process if the identification possesses sufficient aspects of reliability under the totality of the circumstances' test[.] An unnecessarily suggestive procedure is not per se conducive to mistaken identification."

State v. Watkins, 40 N.C. App. 17, 19, 251 S.E.2d 877, 880 (1979) (citations omitted).

> The factors to be considered in determining whether the in-court identification of defendant is of independent origin include the opportunity of the witness to view the accused at the time of the crime, the witness' degree of attention at the time, the accuracy of [her] prior description of the accused, the witness' level of certainty in identifying the accused at the time of the confrontation, and the time between the crime and the confrontation.

State v. Harris, 308 N.C. 159, 166, 301 S.E.2d 91, 96 (1983)).

At trial, Ms. Conway testified to the following in regards to her opportunity to view defendant at the time of the robbery:

> When [the perpetrator] first leaned in, his face was just a few inches in front of mine, but he was looking at the seat. So I saw him in profile. I saw that he was a black man, and he had a thin mustache and facial hair going down to his chin, and he had long dread locks and something on his hair like a bandana.

Ms. Conway further testified that she was not able to see how big or tall the perpetrator was and did not notice what type of clothing he was wearing. However, she had a second opportunity to view the perpetrator when she saw a white car exiting the parking lot after she was robbed and "realized that [the driver] was the man who had just stolen [her] purse."

At trial, Ms. Conway described defendant as: "[a] black male. He had dread locks and some kind of bandana or something on his head. I didn't see how tall he was because I only saw him leaning in my car and then sitting in his car. . . . [Facial hair] [l]ike a goatee and narrow." Ms. Conway's description of defendant was in fact quite similar to that of Rhea Royster's (Ms. Royster) who witnessed the robbery. Ms. Royster testified that she had been in the Wal–Mart parking lot on 10 August 2008 and saw a man "crunched over in a car . . . yelling [.]" Ms. Royster then spoke with Ms. Conway and Ms. Conway told her she had just been robbed. When the police arrived, Ms. Royster described the perpetrator as follows: "I told them that he had long dreads, that he had like a bandana—some kind of bandana or head scarf on the top part of his head, that he had on blue jeans with some kind of very colorful stitching on the pockets."

The State had Ms. Conway explain how she was able to make an in-court identification of defendant in light of the fact that she was not able to identify defendant in a photographic line-up or in a single photograph. Ms. Conway gave the following explanation:

9

> When [the robbery] occurred, I saw the man from the right side. I only saw
> him in profile when he was reaching across me and looking at the passenger
> seat. I never saw him from the front, only from the side. And then again, as
> he was backing his car out and looking over his shoulder, I saw the right side
> of his face. The photos that I was shown were only front views. There were
> no side views, and I didn't recognize him from the photographs. But, when
> I was sitting in the courtroom yesterday . . . I could see him in profile, and I
> recognized him at that time.

Ms. Conway further explained that she was able to specifically recognize defendant's mouth, chin, and facial hair in his profile, thereby displaying her attention to detail.

The trial court found that the unnecessarily suggestive procedures that were used prior to trial did not create a likelihood of irreparable misidentification at trial. Although approximately twenty-one months passed between the time of the alleged offense and Ms. Conway's testimony at trial, the admission of Ms. Conway's in-court identification of defendant, under the totality of the circumstances, was sufficiently reliable and of independent origin. Defendant's argument is overruled.

Avent, 2011 WL 3276753 at *2-4.

    c.    ADEPA Application

While the state court found that the out-of court single photographic line-up was unnecessarily suggestive, thus satisfying prong one of the test, the state court properly reviewed the factors to be considered in determining the reliability pong. The court made a detailed analysis considering the totality of the circumstances and found the identification reliable. The court considered the witness's opportunity to view the suspect at the time of the crime; the witness's degree of attention at the time; the accuracy of the witness's initial description of the suspect; the witness's level of certainty in making the identification; the explanation of how the in-court identification was made by the victim; the length of time between the crime and the identification; the fact that no identification resulted from the single photo array; and a detailed explanation as to why the victim had been unable to make an earlier identification. The Court of Appeals' opinion as to the reliability and admissibility of the in-court identification of defendant

10

did not result in a decision contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, i.e., Simmons and Neil. Nor is the opinion based on an unreasonable determination of facts, in light of the evidence presented in the state court proceedings. See Harrington, ___ U.S. ___, ___, 131 S. Ct. 770, 784-85 (2011); see also Cullen v. Pinholster, ___ U.S. ___, ___, 131 S. Ct. 1388, 1389-99 (2011) ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."). The claim is dismissed.

Having determined that the state court correctly found no due process violations in allowing the in-court identification of petitioner, claims 2 and 3 (the trial court erred when it denied his motion to dismiss the armed robbery charge for insufficient evidence because the State's case was based primarily on a tainted and unreliable identification and the courtroom setting in which Ms. Conway had an opportunity to identify petitioner was suggestive) must also fail. This is because of these claims are interdependent on an improper identification. The claims are dismissed.

Certificate of Appealability

Having dismissed the petition, the court must now consider the appropriateness of the certificate of appealability. See Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") ("the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.") A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further.

11

Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

Conclusion

Accordingly, respondent's Motion for Summary Judgment [D.E. 9] is GRANTED, and the matter is DISMISSED. The certificate of appealability is DENIED. The Clerk is DIRECTED to CLOSE the case.

SO ORDERED, this 16 day of July 2013.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE